**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Cochran & Pease, LLC d/b/a Terri*
*Debtor and Debtor-In-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Cochran & Pease, LLC d/b/a Terri,

                Debtor.

------------------------------------------------------------x

                        Chapter 11

                        Case No.: 19-10903 (JLG)

**COCHRAN & PEASE, LLC'S PLAN
OF LIQUIDATION DATED JANUARY 21, 2020**

# TABLE OF CONTENTS

ARTICLE I:  INTRODUCTION .................................................................................................. 1

ARTICLE II:  DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION .................... 1

    A.   DEFINITIONS ........................................................................................................ 1
    B.   INTERPRETATION, RULES OF CONSTRUCTION, COMPUTATION OF TIME AND CHOICE OF LAW ........ 8

ARTICLE III:  DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ................... 10

    A.   CLASS 1 – TIMBERLAND'S SECURED CLAIM .......................................................... 10
    B.   CLASS 2 – GENERAL UNSECURED CLAIMS ............................................................ 10
    C.   CLASS 3 – EQUITY INTEREST HOLDERS ............................................................... 10

ARTICLE IV:  TREATMENT OF CLASSES OF CLAIMS, INTERESTS, AND UNCLASSIFIED CLAIMS OR INTERESTS ......................................................................................... 11

    A.   UNCLASSIFIED CLAIMS ..................................................................................... 11
       1.  United States Trustee Fees ................................................................... 11
       2.  Administrative Claims ......................................................................... 11
          (a)  Generally ................................................................................ 11
          (b)  Administrative Expenses Incurred After Confirmation Date ................ 12
       3.  Priority Tax Claims ............................................................................ 12
    B.   TREATMENT OF ALLOWED CLASS 1 SECURED CLAIM ............................................ 13
    C.   TREATMENT OF ALLOWED CLASS 2 UNSECURED CLAIM ........................................ 13
    D.   TREATMENT OF CLASS 3 EQUITY INTERESTS ...................................................... 13
    E.   CONTROVERSY WITH RESPECT TO IMPAIRMENT .................................................. 13

ARTICLE V:  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........... 13

    A.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 13

ARTICLE VI:  MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ................. 14

    A.   SOURCE OF PAYMENTS ...................................................................................... 14
    B.   MANAGEMENT OF REORGANIZED DEBTOR ......................................................... 14

ARTICLE VII:  CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF THE PLAN ............. 14

ARTICLE VIII:  PROCEDURES FOR RESOLVING AND TREATING CLAIMS ........................ 14

    A.   RESOLUTION OF DISPUTED CLAIMS .................................................................... 14
    B.   ESTIMATION ..................................................................................................... 15
    C.   ALLOWANCE OF DISPUTED CLAIMS .................................................................... 15

ARTICLE IX:  PROVISIONS CONCERNING CAUSES OF ACTION ....................................... 16

ARTICLE X:  PROVISIONS GOVERNING DISTRIBUTIONS ................................................ 16

    A.   DISBURSING AGENT .......................................................................................... 16
    B.   UNCLAIMED DISTRIBUTIONS ............................................................................. 17
    C.   PROFESSIONAL FEES AND EXPENSES .................................................................. 17
    D.   ROUNDING ....................................................................................................... 18

ARTICLE XI:  CRAM DOWN .............................................................................................. 18

ARTICLE XII:  RETENTION OF JURISDICTION .................................................................. 18

    A.   RETAINED JURISDICTION ................................................................................... 18

ARTICLE XIII:  NOTICES .................................................................................................. 20

ARTICLE XIV:  MISCELLANEOUS PROVISIONS ................................................................ 20

A.    APPLICABLE LAW...................................................................................................................... 20
B.    UNENFORCEABILITY OF PARTICULAR PROVISIONS.................................................................. 21
C.    REVOCATION AND WITHDRAWAL PRIOR TO CONFIRMATION ................................................... 21
D.    AMENDMENT AND MODIFICATION ........................................................................................... 21
E.    LIMITATION OF LIABILITY ...................................................................................................... 21
F.    POST-CONFIRMATION PROFESSIONAL FEES ............................................................................. 22
G.    SUCCESSORS AND ASSIGNS ...................................................................................................... 22
H.    BINDING EFFECT OF PLAN........................................................................................................ 23

# ARTICLE I

# INTRODUCTION

Cochran & Pease, LLC (the "Debtor") hereby proposes the following plan of liquidation dated January 21, 2020 (the "Plan") for the resolution of the Debtor's outstanding creditor Claims (as hereinafter defined) and Equity Interests (as hereinafter defined).  Reference is made to the Debtor's disclosure statement dated January 21, 2020 (the "Disclosure Statement") for a discussion of the Debtor's history, business and results of operations and a summary and analysis of the Plan and certain related matters.

All holders of Claims and Equity Interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and the Plan before voting to accept or reject the Plan.  To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern.  No materials other than the Disclosure Statement and exhibits and schedules attached thereto or referenced therein have been approved by the United States Bankruptcy Court for the Eastern District of New York for use in soliciting acceptances or rejections of this Plan.

# ARTICLE II

# DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

## A.    Definitions

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

**"23rd Street Lease"** means the lease between Whitehall II Properties LLC, as landlord and the Debtor, as tenant dated _____, 2009 for  the term of approximately ten (10) years and

six (6) months for a portion of the premises known as 64 West 23rd Street, New York, New York 10001.

**"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estate of the Debtor, operating the business of the Debtor, all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under Sections 330, 331 and 503 of the Bankruptcy Code.

**"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**"Allowed Claim"** means a Claim against the Debtor to the extent that the Claim is allowed pursuant to the Plan, or (a) a proof of such Claim was (i) timely Filed; or (ii) deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with the Plan has passed, the Debtor has not Filed an objection or any such objection is withdrawn following the expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Class 2 Claim that was Scheduled by the Debtor in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any Filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtor as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any Filed proof of claim is of an equal or

more junior priority than the priority of the Claim Scheduled by the Debtor; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

**"Amex"** means American Express National Bank.

**"Bankruptcy Code"** means Title 11 of the United States Code, as the same was in effect on the Petition Date, as amended from time to time.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or such other Court as may hereafter be granted jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Southern District of New York, as the same may from time to time be in effect and applicable to the Reorganization Case and proceedings therein.

**"Bar Date"** means November 22, 2019, which was the deadline to file proofs of Claim in the Chapter 11 Case as provided by order of the Bankruptcy Court or any other deadline to file proof of claims set by the Bankruptcy Court or agreed to by the Debtor.

**"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means lawful currency of the United States and cash equivalents.

**"Chapter 11 Case"** means the Debtor's case for reorganization under Chapter 11 of the Bankruptcy Code, Case Number 19-10903 (JLG) entitled "In re: Cochran & Pease, LLC", now pending in the Bankruptcy Court.

**"Claim"** means a claim against the Debtor or its property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

**"Class"** means a group of Claims or Equity Interests consisting of Claims or interests which are substantially similar to each other as classified pursuant to this Plan.

**"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

**"Confirmation Date"** means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court to consider confirmation of this Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Debtor"** means "Cochran & Pease, LLC", the Debtor-in-Possession in the Chapter 11 Case.

**"Debtor-in-Possession"** means the Debtor, as debtor-in-possession in the Chapter 11 Case.

**"Disbursing Agent"** shall mean Tarter Krinsky & Drogin LLP, or such other person as may be designated by the Bankruptcy Court.

**"Disclosure Statement"** means the Debtor's disclosure statement to accompany its plan of liquidation dated January 21, 2020 (and all annexes attached thereto or referenced therein) which relates to the Plan and that is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order. Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claims specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

**"Distribution Dates"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to the Plan.

**"Distributions"** means the payments to creditors and others (e.g., Professional Persons) of Cash pursuant to and required by this Plan.

**"Effective Date"** means the date on which the Confirmation Order becomes a Final Order.

**"Equity Interest"** means the rights and interests of a member in the Debtor.

**"Equity Interest Holder"** means the holder of an Equity Interest.

**"Estate"** means the estate created in the Chapter 11 Case under Section 541 of the Bankruptcy Code.

**"Executory Contracts"** means all contracts or unexpired leases to which the Debtor is a party and which is executory within the meaning of Section 365 of the Bankruptcy Code.

**"Face Amount"** means, with respect to any Claim, (a) if the holder of such Claim has not timely filed proof thereof with the Bankruptcy Court, the amount, if any, of such Claims scheduled and not listed as disputed, contingent or unliquidated (b) if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, and the Debtor has not filed an objection, the amount stated in such proof, or (c) if a Claim has become an Allowed Claim pursuant to a Final Order, the amount of such creditor's Allowed Claim.

**"Filing Date"** means March 27, 2019, the date the Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

**"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**"Governmental Unit"** shall have the meaning set forth at Section 101(27) of the Bankruptcy Code.

**"Insiders"** shall have the meaning as contained in Section 101(31) of the Bankruptcy Code.

**"Leases"** means collectively, the 23rd Street Lease and the Long Island City Lease.

**"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

**"Long Island City Lease"** means the lease between Maxim Holding Company LLC and the Debtor dated May 25, 2017 and any amendments or riders to such lease for a portion of the third floor in the building known as 10-40 45th Avenue, Long Island City, NY 11101.

**"Person"** shall have the meaning ascribed to such term in Section 101(41) of the Bankruptcy Code.

**"Plan"** means this plan of liquidation, as altered, amended or modified from time to time, and all attachments and exhibits thereto.

**"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, and (b) a Priority Tax Claim.

**"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim or Equity Interest of a particular Class, the same proportion that the amount of such Allowed Claim or Equity Interest bears to the aggregate amount of all Allowed Claims or Equity Interests of such Class.

**"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtor in accordance with Section 327 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code.

**"Reorganized Debtor"** shall mean the Debtor on or after the Effective Date.

 **"Scheduled"** means as set forth in the Schedules of Assets and Liabilities.

**"Schedules of Assets and Liabilities"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as the same have been or may be amended from time to time prior to the Effective Date.

**"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on the property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with Section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing such Claim, or (b) for which the holder asserts a valid setoff under Section 553 of the Bankruptcy Code.  To the extent that the amount claimed by the holder of a Secured Claim exceeds the value of the property securing such Claim, the holder of such Secured Claim shall have an Unsecured Claim equal to the amount of the excess.

**"Timberland"** means Timberland Bank.

 **"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

**"Unsecured Creditor"** means the holder of an Unsecured Claim.

**B.** **Interpretation, Rules of Construction,**
   <u>**Computation of Time, and Choice of Law**</u>

In the event of a conflict between the Plan and the Disclosure Statement, the contents of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of the Plan.

Any term used in the Plan that is not otherwise defined in the Plan either in Article II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. The definitions and rules of construction contained herein shall also apply to the Disclosure Statement and to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to the Plan.

The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in the Plan.  The word "including" shall mean "including, without limitation."

Any reference in the Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

The following is a designation of the Classes of Claims and Equity Interests under the Plan.  Administrative Claims, Priority Tax Claims and statutory fees due to the United States Trustee have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class.

A.    **Class 1 – Timberland's Secured Claim**

Class 1 consists of the Secured Claim of Timberland.

B.    **Class 2 - General Unsecured Claims**

Class 2 consists of all Unsecured Claims against the Debtor

C.    **Class 3 - Equity Interest Holders**

Class 3 consists of the Debtor's Equity Interest Holders.

## ARTICLE IV

### TREATMENT OF CLASSES OF CLAIMS, INTERESTS, AND UNCLASSIFIED CLAIMS OR INTERESTS

**A.**    **Unclassified Claims**

   **1.**    **United States Trustee Fees**

All fees payable by the Debtor under Section 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by the Debtor on the Effective Date.  In addition, the Debtor, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for and the Disbursing Agent on behalf of the Debtor shall pay such fees until the entry of a final decree in this case or until the case is converted or dismissed.  The Disbursing Agent shall file post-confirmation operating reports with the Bankruptcy Court and the United States Trustee until a final decree is entered.

   **2.**    **Administrative Claims**

   **(a)**    **Generally.**  Except as provided otherwise in this Article IV of the Plan, each holder of an Allowed Administrative Claim (including, without limitation, the professionals' fees and expenses incurred by the Professional Persons and allowed in a Final Order of the Bankruptcy Court) shall be paid in full, in Cash, by the Disbursing Agent (i) on the later to occur of the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (ii) upon such other terms as may exist in the ordinary course of business of the Debtor; or (iii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between such Allowed Administrative Claimholder and the Debtor or Reorganized Debtor.

**(b)**    **Administrative Expenses Incurred After Confirmation Date.**

Administrative Claims representing obligations incurred by the Debtor after the Confirmation Date shall not be subject to application to the Bankruptcy Court and may be paid by the Reorganized Debtor in the ordinary course of business and without further Bankruptcy Court approval.  As more fully set forth herein, after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be submitted monthly to the Reorganized Debtor and the Office of the United States Trustee by such professionals in the form of a detailed invoice therefor, and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission.  If the Reorganized Debtor disputes the reasonableness of any such invoice within ten (10) days of receipt of such proposed fees, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Reorganized Debtor, or the affected Professional may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

**3.**    **Priority Tax Claims**

Each holder of a Priority Tax Claim that has not been paid prior to the Effective Date shall be paid in full the Allowed Amount of its Priority Tax Claim no later than July 31, 2020. In the event, there are insufficient funds from the liquidation of the Debtor's assets to pay

the Allowed Priority Tax Claims, Michael Pease shall enter into an installment payment agreement with the relevant taxing authority to pay the balance over time.

**B.**     **Treatment of Allowed Class 1 Secured Claim**

Class 1 is impaired.  The Reorganized Debtor shall pay Timberland $20,000.00 in full satisfaction of its Class 1 Allowed Secured Claim in cash no later than July 31, 2020.  Upon full payment of Timberland's Allowed Class 1 Claim, Timberland's Liens shall be discharged.

**C.**     **Treatment of Allowed Class 2 Unsecured Claims**

Class 2 is impaired.  Holders of Allowed Class 2 Claims shall receive their Pro Rata share of $20,000.00 in full settlement and satisfaction of their Claims paid no later than July 31, 2020.

**D.**     **Treatment of Class 3 Equity Interests**

On the Effective Date, all Equity Interest Holders in the Debtor shall have their Equity Interests canceled and terminated and receive no money and/or property on account of such Equity Interests.

**E.**     **Controversy with Respect to Impairment**

In the event of a controversy as to whether a Claimant or holder of an Equity Interest is impaired, the Court shall after notice and a hearing, determine such controversy.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Treatment of Executory Contracts and Unexpired Leases**

In the event there are any executory contracts or unexpired leases that have not been either (a) assumed and assigned, or (b) rejected, all executory contracts and unexpired leases that exist as of the Confirmation Date between the Debtor and any Person shall be deemed rejected as

of the Confirmation Date.  The Bankruptcy Court has previously approved the assumption of the Leases. The Debtor is unaware of any other executory contracts.

## ARTICLE VI

### MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.**     **Source of Payments**

The funds necessary to make the payments required under the Plan shall be from the liquidation of all of the Debtor's assets which includes various restaurants, machinery and equipment as well as a 2014 Isuzu refrigerated box truck.

**B.**     **Management of Reorganized Debtor**

The Reorganized Debtor shall be managed by Michael Pease and Craig Cochran until all assets have been liquidated and Distributions under the Plan have been completed.

## ARTICLE VII

### CONDITIONS PRECEDENT TO THE EFFECTIVENESS OF THE PLAN

The only condition precedent to the effectiveness to the Plan is the entry of the Confirmation Order and the Confirmation Order becoming a Final Order.

## ARTICLE VIII

### PROCEDURES FOR RESOLVING AND TREATING CLAIMS

**A.**     **Resolution of Disputed Claims**

Objection to Disputed Claims shall be filed with the Bankruptcy Court by the Debtor and served upon each holder of such Disputed Claims to which objections are made not later than sixty (60) days subsequent to the Effective Date.  Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion."  The Disbursing Agent shall pay

the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

## B.    Estimation

The Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed Amount of such Claim, the amount on which a reserve is to be calculated for purposes of the Disputed Claims Reserve, or a maximum limitation on such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation of such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

## C.    Allowance of Disputed Claims

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim (i) the amount of Cash that such holder would have been entitled to receive under this Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date, which shall not exceed the amount of Cash reserved on account of such Claim.  Notwithstanding anything to the contrary contained in this Plan, the

Disbursing Agent shall make a distribution on the non-disputed portion of an Unsecured Claim in accordance with the provisions of the Plan.

## ARTICLE IX

## PROVISIONS CONCERNING CAUSES OF ACTION

Except as otherwise provided by this Plan, on the Effective Date, the Debtor shall retain all rights, claims and causes of action that have been or may be commenced by the Debtor including, but not limited to, those arising out of Sections 544 through 550 of the Bankruptcy Code or any similar provisions of state law or any statute or legal theory.  The Debtor may, in accordance with its determination of the best interests of the estate, enforce such claims, rights or causes of action.

## ARTICLE X

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    **Disbursing Agent**

Tarter Krinsky & Drogin LLP shall act as Disbursing Agent.  Scott S. Markowitz shall be in charge of all matters relating to Disbursements required on the Effective Date of the Plan.  The Reorganized Debtor shall make the Disbursements required to be made after the Distributions made on the Effective Date.  The Disbursing Agent shall not be liable for any act or omission taken or omitted to be taken in its capacity as a Disbursing Agent other than acts or omissions resulting from willful misconduct, gross negligence, fraud or breach of fiduciary duty.  In the event that the Disbursing Agent changes prior to the entry of an order of final decree closing the Debtor's Chapter 11 case, the Bankruptcy Court and the United States Trustee shall be notified in writing of such identity and address of the new Disbursing Agent.

B.    **Unclaimed Distributions**

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court, unless superceded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

All Claims for undeliverable Distributions shall be made on or before the earlier of (i) with respect to the initial Distributions made on or after the Effective Date, one hundred and twenty (120) days after the date such undeliverable Distribution was initially made and (ii) with respect to the Distributions made subsequent to the Distribution made on the Effective Date, sixty (60) days after the date such undeliverable Distribution was initially made.  If any Claim for an undeliverable Distribution is not timely made as provided in the foregoing sentence, such Claim shall be forever barred.

C.    **Professional Fees and Expenses**

Each of the Professionals requesting compensation in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date within forty-five (45) days after the Confirmation Date.

**D.**    **Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

## ARTICLE XI

## "CRAM DOWN"

In the event Classes of Claims do not vote to accept the Plan, the Debtor will invoke the "Cram Down" provisions of Bankruptcy Code §1129(b).  In that event, the Debtor reserves the right to modify the Plan to the extent, if any, the confirmation of the Plan under §1129(b) of the Bankruptcy Code requires modification.

## ARTICLE XII

## RETENTION OF JURISDICTION

**A.**    **Retained Jurisdiction**

Following Confirmation, except as provided below, the Bankruptcy Court may retain such jurisdiction as is legally permissible after Confirmation, including, without limitation, for the following purposes:

1.     To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

2.     To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

3.     To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

4.      To hear and determine motions to approve the sale of assets of the Debtor under Section 363 of the Bankruptcy Code and/or the rejection or affirmance of executory contracts under Section 365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

6.      To hear and determine all Claims arising from the rejection of executory contracts or unexpired leases.

7.      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

8.      To make orders allowing amendment of the schedules filed in the Chapter 11 Case for any purpose including, without limitation, to perfect objections to Claims not previously listed as disputed, contingent or unliquidated.

9.      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

10.     To hear and determine any and all motions to abandon property of the Debtor's estate.

11.     To make such other orders or give such directions as permitted by Section 1142 of the Bankruptcy Code.

12.     To consider and order any modifications or amendments requested to the Plan.

13.     To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

14.    To make all orders necessary or appropriate to carry out the provisions of the Plan.

15.    To enforce all orders previously entered by the Bankruptcy Court.

16.    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE XIII

## NOTICES

Except as otherwise herein provided, all notices required to be made in or under the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

If to the Debtor:          Cochran & Pease, LLC
                           64 West 23rd Street
                           New York, New York 10001
                           Attn: Michael Pease/Craig Cochran

With a copy to:            Tarter Krinsky & Drogin LLP
                           1350 Broadway, 11th Floor
                           New York, New York 10018
                           Attn: Scott S. Markowitz, Esq.

Any person may change the address at which he is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Debtor.  Furthermore, notice shall be given to all of the above and their successors.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

A.    **Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

**B.**      <u>**Unenforceability of Particular Provisions**</u>

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

**C.**      <u>**Revocation and Withdrawal Prior to Confirmation**</u>

The Debtor reserves the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

**D.**      <u>**Amendment and Modification**</u>

The Debtor may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of the Plan, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim or Equity Interest, amend the Plan to remedy any defect or omission or reconsider any inconsistencies in the Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of the Plan.

**E.**      <u>**Limitation of Liability**</u>

**The Debtor and its respective officers, directors, shareholders, employees, trustees, members, affiliates and agents (including any Professionals employed by one or more of them), shall have no liability to any holder of an Administrative Claim, Claim or Equity**

**Interest, or any other person under any theory of liability for any act taken or omission made with respect to the Debtor since the Filing Date or in connection with, related to, or arising out of, the formulation, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, agreement or document created in connection with the Plan, the pursuit of approval of the Disclosure Statement or the solicitation of votes for or confirmation of the Plan, or the administration of the Debtor's case, the Plan or the property to be distributed under the Plan, except for willful misconduct, gross negligence or breach of fiduciary duty as determined by Final Order of the Bankruptcy Court and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

**F.      Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date, the Debtor shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-confirmation administration of its estate and this Plan incurred by its professionals and by professionals.

**G.      Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**H.**    **Binding Effect of Plan**

Upon the Confirmation Date, all of the provisions of the Plan shall be binding on the

Debtor, on all Creditors, on all Equity Interest Holders, and on all other entities who are affected

(or whose interests are affected) in any manner by this Plan.

Dated:  New York, New York
         January 21, 2020

**COCHRAN & PEASE, LLC**                    **TARTER KRINSKY & DROGIN LLP**
*Debtor and Debtor-in-Possession*          *Attorneys for Cochran & Pease, LLC*
                                           *Debtor and Debtor-in-Possession*


By: /s/ Michael Pease_____     By: /s/ Scott S. Markowitz_____
      Michael Pease                              Scott S. Markowitz, Esq.
      Managing Member                            1350 Broadway, 11th Floor
                                                 New York, New York 10022
                                                 Phone: (212) 216-8000
                                                 Email: smarkowitz@tarterkrinsky.com